WILLIAM W. JOHNSTONE, Appellant, *v.* JOHN W. BUTLER, INC., Respondent.

(Supreme Court, Appellate Term, First Department, December, 1917.)

Account stated — what constitutes — evidence — counterclaim — arbitration — appeal.

Where plaintiff's cause of action and defendant's counterclaim were both predicated upon an account stated, and defendant, in support of its contention that the receipt by

plaintiff without objection of a statement prepared by an audit company, plus the implied approval thereof evidenced by plaintiff as treasurer of defendant signing the check given to the audit company in payment for services in preparing the account, and its deposit by him or its continued presence in defendant's safe, constituted an account stated between plaintiff and defendant, in addition to testimony brought out on plaintiff's cross-examination as to the circumstances under which the account had been prepared, and the conversations between him and the only real stockholder of defendant, its president and manager, showed that plaintiff had not objected to the account, and substantially all the evidence on defendant's affirmative case was that elicited from plaintiff, because between the time of the preparation of the account and the commencement of the instant action defendant's president and treasurer had died; and not only is there nothing in the testimony to warrant the conclusion that plaintiff and defendant's president and manager agreed to accept as final, either by way of an account stated or as an arbitration, the report of the auditor, but all the circumstances plainly indicate that what was sought from the accountant was either a corroboration or a correction of the statement prepared by defendant's bookkeeper from the books of defendant, the denial of a motion to dismiss the counterclaim was reversible error and a judgment in favor of defendant thereon, entered upon a verdict, will be reversed and a new trial granted.

APPEAL by plaintiff from a judgment in favor of defendant on its counterclaim, entered upon the verdict of a jury in the City Court of the City of New York.

Franklin Taylor (Joseph J. Zeiger, of counsel), for appellant.

Julius Offenbach (Max D. Steuer and Sydney J. Loeb, of counsel), for respondent.

BIJUR, J.   Plaintiff's cause of action and defendant's counterclaim were both predicated upon an account stated.

The facts as testified to by plaintiff and confirmed

Appellate Term, First Department, December, 1917.   [Vol. 102.

in part indirectly by certain witnesses were as follows: On April 6, 1914, plaintiff became assistant manager and treasurer of defendant corporation, which was practically an incorporation of an egg and butter business previously conducted by John W. Butler personally. Butler was in fact the only real stockholder of the corporation and its president and manager. Plaintiff's employment was for one year. The contract was renewed at the end of the first year. Plaintiff's compensation during the first year was to be thirty-three and one-third per cent of the net profits of the business. At the end of March, 1915, the bookkeeper made out his annual statement which showed net profits in round figures of $73,000. A few days thereafter plaintiff and Butler had a conference. "He (Butler) said, 'We ought to have a public accountant come in to verify this.' I said, 'While I went in on the statement of the bookkeeper, and I was satisfied to take the statement of the bookkeeper because I thought everything was all right.' So he talked several times about having an accountant, and I said, 'All right, we will have a public accountant.' So finally we got some accountant he had had years before, The American Audit Company."

The audit company on May fourth submitted a balance sheet as of March thirty-first, which showed net profits in round figures of $59,000 after deducting a "reserve for bad debts" of $10,000. When that statement was received, plaintiff had another conversation with Butler, which he narrates as follows: "He (Butler) said there was a difference in the accountant's figures and the bookkeeper's and he asked how I accounted for it. I said I could not account for it. He said, 'Which do you think is right?' I said, 'I assume the accountant is right, although when I went in I took the bookkeeper's figures and I always thought his were right, but when the accountant said there was a differ-

ence I assumed they must have been right.' Then he said, ' I see the accountants are deducting ten thousand dollars.' I said, ' Well, I don't see why they should do that, because when I came in with you I came in and took your figures as they were.' He said, ' Would you be willing to take the $69,000 as a basis of settlement.' I said ' yes,' and so we finally settled, or agreed to, on a basis of $69,000. That was to be my share for the year.''

Plaintiff was also asked, '' Had you, prior to that time, ever had any talk with Butler, or had he ever intimated that there was to be a reservation for bad debts? A. No.'' He also testified that when he was employed by defendant there were outstanding accounts of the business from the previous year in large amounts. Plaintiff testified further that during the year ending April 6, 1915, he had drawn on account of his '' drawing account '' $5,200 and in August, 1915, nearly $17,000, making his total withdrawals on account of the fiscal year ending April 6, 1915, nearly $22,000. By the account stated, to which he had testified, he would have been entitled in round figures to over $23,000, and his suit is for the difference for that year, which to be exact was $1,177.43. Had the jury believed his story it should have rendered judgment in his favor for that amount. The verdict for defendant clearly imports the jury's disbelief. But in view of the fact that on cross-examination defendant's counsel was permitted to bring out and dilate at length and elaborately on matters immaterial to the issue but prejudicial to plaintiff, a bare verdict in defendant's favor (aside from a judgment upon its counterclaim) might nevertheless have to be set aside.

Assuming, however, that these errors might be overlooked, nevertheless we could not disregard the introduction of still more harmful evidence of the same kind

on defendant's own case. Thus one Deutsch (whose relation to plaintiff or defendant was unexplained) was permitted to testify, over appropriate objection, that he had examined the books of defendant within a few days before the trial, and that he had found therein a total of over $8,500 of unpaid accounts due to the corporation out of the business for the year ending April 1, 1915. This testimony was clearly immaterial and irrelevant to the issues proffered either by the complaint or answer, which were whether accounts had been stated. Its only purpose could have been to impress the jury with the immaterial consideration that the $10,000 '' reserve for bad debts '' suggested by the audit company was justified or reasonable. Even at that, as a matter of evidence, it proved only that those accounts had not been paid at the time of trial, and not that they were absolutely bad.

Further comment on this branch of the case, however, is unnecessary, because the judgment must in any event be reversed for the reasons which follow: The defendant-respondent's contention is that the statement prepared by the audit company became an account stated between plaintiff and defendant. On cross-examination, respondent's counsel brought out, in addition to the testimony which plaintiff gave as to the circumstances under which this account had been prepared and the conversation that ensued between Butler and himself, that plaintiff had not objected to the account (except in so far as his conversation with Butler may have represented such objection); that he, as treasurer of the corporation, actually signed the check whereby the audit company was paid for its service in preparing the account, and that the account itself was either put by plaintiff in the corporation's safe or at least was left there by him with knowledge that it was there. Substantially all the evidence on

defendant's affirmative case was that elicited from the plaintiff, owing to the fact that Butler had died between the time of the preparation of the account and the bringing of this suit by the plaintiff. It is not contended in respondent's brief, as I read it, that there is any evidence in its favor of an account *expressly* " stated " in the amount of the statement prepared by the audit company. Respondent must necessarily rely on the implication of an account stated, asking that that inference be drawn by the jury from the circumstances which I have narrated. There is nothing in the testimony to warrant the conclusion that plaintiff and Butler agreed to accept as final (by way either of an account stated or as an arbitration) the report of an accountant. Not only does plaintiff's testimony fail to afford any basis for such an inference, but the circumstances and the situation and the relation of the parties plainly indicate as a matter of common sense that what was sought from the accountant was either a corroboration or a correction of the statement prepared by the bookkeeper from the books of the defendant — a matter of common occurrence in every day life. Nor was there any such dispute or disagreement between the parties as required the determination by an arbitrator. Moreover, the very form of the item which constitutes the basis of this controversy, namely, a $10,000 " reserve for bad debts," indicates that the statement in itself was not designed as a final determination, and that it involved not a decision as to a disputed fact but a suggestion as to an advisable and conservative bookkeeping or business method. It is certainly incredible that plaintiff and Butler should have agreed to accept as final the determination of this accountant (the audit company) not merely to interpret the facts actually represented by entries in defendant's books, but also to establish a new business policy

Appellate Term, First Department, December, 1917. [Vol. 102.

which the books would not ordinarily and did not in this case record. If the arrangement between plaintiff and Butler was sufficient to warrant defendant in charging against plaintiff's account as an absolute reduction thereof his proportion of this $10,000 " reserve for bad debts," it would have been equally effective in that regard as to any amount so reserved by the accountant in good faith — a conclusion which seems to me to be so manifestly absurd as to require no further disproof. However, as I understand it, respondent does not claim that it was expressly or impliedly agreed in *advance* that the statement of the audit company should be accepted as a final determination of the rights of the parties. Its contention appears to be that the receipt of the statement by plaintiff without objection, plus the implied approval evidenced by plaintiff's payment for the preparation of the statement, and, finally, its deposit by him, or its continued presence in defendant's safe, constituted a basis for a possible finding that the statement became an " account stated," by acquiescence. I can find no valid ground for such conclusion.

In the leading case of *Lockwood* v. *Thorne,* 18 N. Y. 285–288, is to be found the very conservative statement: " If the account should be made out by one party and transmitted to the other party by mail, and the latter should omit to communicate objections to the party rendering the account within a reasonable time, an inference might be drawn that he was satisfied with it." Standing by itself this statement could possibly be construed as some support to defendant's position, but an examination of the case indicates that it arose between merchants, and that the account referred to was an " account current " containing credits and charges, a copy of which was sent in the ordinary course of business. Moreover, what was actually decided in the

*Lockwood* case was that this merely possible inference of an assent to the account must be construed in the light of all the circumstances, and that the party sought to be charged must be permitted to show his entire course of conduct regarding the account and how the matter was understood by the other party.

The subject is more elaborately discussed in *Newburger-Morris Co.* v. *Talcott,* 219 N. Y. 505–511. The Court of Appeals there said, by Cardozo, J.: " There is no doubt that an account stated may sometimes result from the retention of accounts current without objection (*Knickerbocker* v. *Gould,* 115 N. Y. 533; *Spellman* v. *Muehlfeld,* 166 N. Y. 245). But the result does not always follow. It varies with the circumstances that surround the submission of the statements (*Harvey* v. *West Side Elevated R. Co.,* 13 Hun, 392; *Eames Vacuum Brake Co.* v. *Prosser,* 157 N. Y. 289–300), and those circumstances include, of course, the relation between the parties. * * * The debit balances shown by these monthly statements did not, therefore, constitute a present debt. They did not speak the language of present demand for payment or adjustment. *They were like the statements rendered by one partner to another.* * * * The implication was that they were ' offered merely as a basis for subsequent liquidation.' They were provisional advices. They were not definitive demands.''

It appears to me to be a work of supererogation to comment further on these clear statements of the principles governing implied accounts stated, or upon their application to the instant case. I cannot find, either in the form of the statement of the audit company or in the immediate facts concerning it or in the circumstances by which it was surrounded, any valid basis for the inference that it was to be or that it became the foundation of an account stated. Moreover, the only

Appellate Term, First Department, December, 1917. [Vol. 102.

testimony as to plaintiff's attitude toward the statement when it was shown to him is that, when Butler said to him " I see the accountants are deducting $10,000," he replied, " Well, I don't see why they should do that because when I came in with you I came in and took your figures as they were;" and thereupon, according to the testimony, the parties forthwith, at defendant's suggestion, agreed to exclude this item from further consideration. Here then there was an objection immediately made by plaintiff, with no room for further dispute because of defendant's immediate acquiescence in the justice of the objection. The facts that plaintiff, *as treasurer of the corporation,* paid for a service rendered to the corporation, at its request, and that he either put or left in the corporation's safe a statement of account which belonged to the corporation, are entirely without evidentiary value in the premises. It certainly requires no elaborate argument to demonstrate that those official acts cannot be taken as a basis for inferences to be drawn against plaintiff *as an individual.*

From the foregoing exposition of the foundation of respondent's contention that an account was stated in its favor, and bearing in mind that as to this issue the affirmative was upon the defendant, it must be clear that the denial of plaintiff's motion to dismiss the counterclaim was error for which the judgment must be reversed and a new trial granted, with costs to appellant to abide the event.

GUY, J. (concurring in part). I agree in the conclusion reached by my colleague, Justice Bijur, that the defendant failed to make out an account stated and that defendant's counterclaim should, therefore, have been dismissed, the statement rendered by the audit company and retained by the plaintiff being merely of

the nature of a statement rendered as between partners for purposes of subsequent liquidation (see *Newburger-Morris Co.* v. *Talcott,* 219 N. Y. 505–511); but I am of the opinion that the admission of testimony to the effect that $8,500 of the bills receivable as shown by the books of the company at the time of the making of the account stated, as alleged by plaintiff, are still uncollected, while error, would not require a reversal of the verdict in defendant's favor as to plaintiff's claim, as such testimony did not furnish proof of subsequent occurrences, but merely tended to show the character of the apparent assets of the company at the time of the alleged agreement as known to the contracting parties, and was not seriously prejudicial. The plaintiff had a fair and impartial trial before a jury as to his alleged account stated, and the jury's verdict in favor of defendant thereon was fully justified in view of the inherent improbability of the testimony of plaintiff, an uncorroborated, interested witness, and the discredit thrown upon his testimony generally by his admission that, in making payments to himself subsequent to the time of the alleged account stated, he, as treasurer, drew checks to the order of the company with the intent of concealing the fact that they were for payments to himself.

I am of the opinion, therefore, that no new trial should be granted, but that the judgment should be modified so as to make it a judgment generally in favor of defendant and dismissing the defendant's counterclaim.

Judgment reversed and new trial granted, with costs to appellant to abide event.